UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HARRY JACKSON

VERSUS

CIVIL ACTION

JANET NAPOLITANO

NO.: 11-00022-BAJ-SCR

## RULING AND ORDER

This matter is before the Court on a Motion for Summary Judgment (Doc. 19). No further briefing is required.

The Court has carefully reviewed this matter and finds that the motion must be granted for the reasons advanced in Defendant, Janet Napolitano's ("Defendant") supporting memorandum. The Court concludes that the totality of the evidence fails to show genuine issues of material fact as to whether Plaintiff, Harry Jackson ("Plaintiff") was terminated based on his race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et. seq. (West 2012).

The Court further concludes that the summary judgment record fails to show genuine issues of material fact as to whether Plaintiff was terminated from his employment in retaliation for having filed an Equal Employment Opportunity Commission (EEOC) complaint. Thus, under Federal Rule of Civil Procedure 56(a), Defendant is entitled to judgment as a matter of law as to all claims asserted by Plaintiff. The Court reaches this conclusion for several reasons.

First, Plaintiff has not asserted sufficient facts to satisfy a *prima facie* case of discrimination on the basis of race. In a case alleging disparate treatment on the basis of race, absent direct evidence of discrimination, the Supreme Court has enunciated the appropriate analytical framework under which the parties are required to proceed. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981).

The Plaintiff must first prove, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas*, at 802. Where discriminatory discharge is alleged, plaintiff must initially show that he/she was: (1) a member of a protected class, (2) qualified for the job, (3) discharged, and (4) replaced by someone outside of the protected class, or, in the case of disparate treatment, that others similarly situated were treated more fairly. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000).

Here, Plaintiff has not alleged sufficient facts to show a *prima facie* case. In this matter, neither party disputes that Plaintiff was a part of a protected class (African American), he was qualified for his position, nor that he was discharged.

Rather, Defendant contends that the fourth element of the *McDonnell Douglas* framework is not satisfied because Plaintiff is unable to show disparate treatment through more equitable treatment to someone similarly situated.

Defendant avers, and the Court agrees, that Plaintiff does not point to any facts in the record to indicate that Plaintiff was treated less equitably than someone *similarly situated*. Plaintiff argues that James Blair ("Blair"), a Caucasian, Data Entry Clerk, was a similarly situated employee. Further, he alleged that Blair was not suspended or terminated after an altercation between him and Plaintiff, whereas Plaintiff was suspended and finally terminated. This altercation allegedly included threats, profanity, and became physical when Plaintiff approached Blair (Doc. 1 ¶¶ 4-10). Both parties concede that Blair worked in a different field from Plaintiff and held a substantially lower government grade and pay level (*Id.*; Doc. 19-1, at 26).

The Fifth Circuit has articulated that "for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (quoting *Smith v. Wal–Mart Stores* (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990)) ("[I]n order for a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'").

Further, the Fifth Circuit has also instructed that "the employment actions being compared will be deemed to have been taken under *nearly identical circumstances* when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status

determined by the same person, and have essentially comparable violation histories." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (emphasis added).

In this case Plaintiff is unable to show that he was similarly situated to Blair. It is clear that when comparing the employment actions, they were not taken under identical circumstances. When comparing the jobs and responsibilities of Plaintiff and Blair, Blair was a Data Entry Clerk, whereas Plaintiff was a Technical Monitor for Contracting. In addition to the substantially different responsibilities, Plaintiff admits that he was a GS-12, a government grade that is three grades higher than Blair. Thus, considering the "employment status" between the two, Plaintiff's employment status was much higher.

When comparing violation histories, Plaintiff had a significant number of reports of rude and uncooperative behavior, whereas, no record of such history is shown for Blair (Doc. 1-2, at 4).[1] When Plaintiff was terminated on November 21, 2006, he had a history of reports of similar transgressions.

According to the record, the following incidents were reported verbally or in writing during Plaintiff's employment: (1) on August 23, 2006, Plaintiff responded in a "negative and profane" manner when asked a question by a coworker; (2) on August 23, 2006, Plaintiff was "rude and hostile" in a conversation with a coworker when she offered to assist him; (3) a Security Incident Report detailed a confrontation on August 28, 2006, between Plaintiff and a coworker involving "foul

---

[1] The Court notes that the record is void of any past or subsequent misconduct violations on the part of Blair.

4

language along with physical contact;" (4) a Security Incident Report detailed threats made by Plaintiff on October 24, 2006, to a coworker following a disagreement with a contract security guard; and (5) Plaintiff was "rude and unprofessional" on the phone when speaking to a security supervisor, referring to officers as "idiots (Doc. 1-2, at 4)."

The Individual Assistance Section Chief also stated that Plaintiff was terminated because he "displayed continuous explosive, uncooperative and disrespectful behavior" unbecoming of a federal employee (*Id.*).

Thus, when comparing their jobs and responsibilities and violation histories, Plaintiff and Blair were not similarly situated employees when the employment action was taken. Accordingly, Plaintiff has failed to satisfy each necessary element under the *McDonnell Douglas* framework and has failed to establish a *prima facie* case of discrimination.

Additionally, even assuming *arguendo* that Plaintiff asserted a *prima facie* case, Plaintiff has failed to demonstrate that Defendant's non-discriminatory reasons for terminating Plaintiff are mere pretext. As previously noted, in support of the argument that Plaintiff was fired for abusive and uncooperative behavior, Defendant's employment records indicate a significant history of similar employment violations. One of these violations included a Security Incident Report detailing threats made by Plaintiff on October 24, 2006, to a coworker following a disagreement with a contract security guard.

Thus, as a preliminary matter, the Court notes that nearly all of Defendant's arguments that Plaintiff was fired for abusive behavior are ***clearly*** supported by employment records. Plaintiff, on the other hand, supplies merely vague arguments and conclusory allegations that he was terminated for non-legitimate reasons. For example, Plaintiff avers on the first page of his memorandum of opposition that the "n-word was used in a conversation between Guy Bonomo, Brian Boyle, and a 'Mr. Smith' (Federal Emergency Management Agency ("FEMA") employees)" and that two of these individuals are his "accusers" (Doc. 24, at 1). Plaintiff does not give any context to this assertion or demonstrate any connection between this alleged conversation and his termination.

Moreover, nearly all of Plaintiff's arguments concern his former employers' investigation of the incident with his co-employee Blair. Essentially, Plaintiff argues that his former employers' investigation and description of events, particularly his encounter with Blair, are not accurate (Doc. 24, at 8-18). Defendant further argues that his version of the incident is different from that of Blair's (Doc. 24, at 4). The Court notes that Plaintiff's incident with Blair was one incident among many involving abusive and uncooperative behavior. Moreover, according to the record, Plaintiff is unable to rebut the fact that from the time that Plaintiff was hired until he was terminated, there are clear written notices for abusive and/or uncooperative behavior.

In summary, the Court's careful review of all of the summary judgment evidence presented supports a finding in favor of a judgment as a matter of law with

regard to Plaintiff's race discrimination claims. The evidence, even when viewed in the light most favorable to the non-movant, does not raise genuine fact issues with respect to Defendant's non-discriminatory reasons for terminating Plaintiff.

Finally, the Court finds that Defendant is also entitled to judgment as a matter of law with regard to Plaintiff's retaliation claim.

The Fifth Circuit has held that in order to prove a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) he was subject to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) cert. denied, 133 S. Ct. 136, 184 L. Ed. 2d 29 (U.S. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

Further, if the plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996) (citation omitted).

Here, Defendant concedes that Plaintiff engaged in a protected activity when he first contacted an EEO counselor to begin the pre-complaint process on September 22, 2006 (due to his suspension) (Doc. 19-1, at 28). Defendants also concede that Plaintiff suffered an adverse employment action when he was terminated on November 21, 2006. Defendant avers, however, that Plaintiff is unable to show a causal link existed between the protected activity and the adverse

action, and that Defendant terminated Plaintiff for non-retaliatory reasons. The Court agrees.

Even assuming Plaintiff has established a *prima facie* case of retaliation, the timeline of the events resulting in Plaintiff's termination demonstrate a non-retaliatory reason for the termination. According to the facts in the record, Plaintiff's supervisor, in an email dated September 1, 2006, warned Plaintiff against further incidents of abusive and uncooperative behavior (Def's Ex. 6). Plaintiff's supervisor stated that no further incidents involving Plaintiff would be tolerated (*Id.*). According to the record, this email and warning occurred three weeks prior to Plaintiff's protected activity alleged in his retaliation claim.

Additionally, Defendant's process of terminating Plaintiff began slightly before his employers knew of his EEO activities. Another incident involving the Plaintiff was reported to his supervisor on October 25, 2006 and Defendant argues that the termination process began contemporaneous with this incident. According to Defendant, Plaintiff's supervisor had no knowledge of the EEO complaint until he was contacted and interviewed about the complaint on October 30, 2006, which was several days after Plaintiff's employment termination process was initiated (Doc. 19-1, at 29).

Further, as previously noted, numerous events contributed to Defendant's decision to terminate Plaintiff. The termination letter and employment records cite to numerous, prior reported incidents, including the August 28, 2006 incident that gave rise to Plaintiff's suspension. Thus, the Court finds that Defendant has

pointed to sufficient facts in the record indicating that Plaintiff's termination was based on violations of the FEMA policy of promoting professionalism among its employees and ensuring safety in the workplace, rather than Plaintiff's EEO complaint.

Thus, the evidence, even when viewed in the light most favorable to Plaintiff, does not raise genuine fact issues with respect to Defendant's non-retaliatory reasons for terminating Plaintiff. Accordingly, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

Accordingly, **Defendant's Motion for Summary Judgment (Doc. 19) is hereby GRANTED**. Plaintiff's claims are **DISMISSED**, with prejudice, at Plaintiff's cost. Further, **Plaintiff's Motion for Leave to File Opposition to Defendant's Reply Brief (Doc. 28)** is hereby **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 10th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**